UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL E. POLANSKY,

    Plaintiff,

v.        No. 04 C 3526

JOSEPH ANDERSON,
ANDERSON RACING, INC.,
and WILLIAM ROBINSON,

    Defendants.

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff, Michael E. Polansky, claims that Defendants, William Robinson, Joseph Anderson, and Anderson Racing, Inc., engaged in fraud, misrepresentation, and breach of fiduciary duties surrounding four horse sales transactions. Presently before us are defendant William Robinson's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 9(b), and defendants Joseph Anderson's and Anderson Racing, Inc.'s motion to dismiss pursuant to Rules 12(b)(6) and 9(b). For the following reasons we grant defendants' motions and dismiss the claims against Robinson for lack of personal jurisdiction, and dismiss the claims against Anderson and Anderson Racing, Inc. for failure to comply with the heightened pleading requirements for fraud and failing to state a claim for breach of fiduciary duty.

## BACKGROUND

Polansky entered the standardbred horse racing industry sometime in 2001 when he

1

purchased two pacing colt horses. (Compl. ¶ 12.) During the summer of 2002, Monte Gelrod, a veteran horse trainer, began pursuing a business relationship with Polansky.[1] (*Id.* at ¶¶ 13-16.)

In September 2002, Gelrod recommended that Polansky purchase *Miss Billie Le Ru*, a three year old pacing filly, whom Robinson previously trained at his stables in Ontario, Canada. (*Id.* at ¶ 20.) Robinson shipped *Miss Billie Le Ru* to New Jersey for a Sire Stakes race on September 6, 2002. (*Id.* at ¶ 22.) Once in New Jersey, Gelrod trained *Miss Billie Le Ru*. (*Id.*) After she won the race, Gelrod convinced Polansky to purchase *Miss Billie Le Ru* from her owner for $200,000 plus a $10,000 commission to Robinson. (*Id.* at ¶ 23-24.) Polansky alleges that at the time of the purchase, Gelrod and Robinson knew *Miss Billie Le Ru's* value did not exceed $75,000. (*Id.* at ¶ 25.) Robinson denies receiving a commission for the *Miss Billie Le Ru* sale. (Robinson Aff. ¶ 20.)

Next, Polansky invested in *Sly Deputy*, another racing horse. (Compl. ¶ 27.) Gelrod offered Polansky a fifty percent interest in *Sly Deputy* if Polansky agreed to pay half of the $44,000 purchase price. (*Id.*) Polansky paid for his share of the horse and then learned that Gelrod sold his interest to Robinson. (*Id.* at. ¶ 28.) Polansky claims that rather than paying for *Sly Deputy*, Gelrod and Robinson acquired an interest in the horse in return for successfully persuading plaintiff to tender $22,000 to the horse's prior owners. (*Id.* at ¶ 30.) Polansky alleges that Robinson currently owns fifty percent of *Sly Deputy* and that the horse is registered in both of their names. (*Id.* at ¶¶ 29, 31.) According to the complaint, Polansky cannot race the horse so

---

[1] Polansky states that Gelrod misrepresented his status as a qualified independent trainer and advisor. (*See, e.g.,* Compl. ¶ 13-16.) However, Polansky did not name Gelrod as a defendant. (*Id.* at ¶ 5.) Consequently, the facts focus on defendants' involvement with Polansky and only refer to Gelrod where necessary to provide context.

long as Robinson remains part-owner because Robinson's license was temporarily revoked. (*Id.* at ¶ 31; Robinson Aff. ¶ 6.) However, Polansky admitted that Robinson no longer owns *Sly Deputy* in his response to the instant motion. (Opp'n to Mot. at 6.)

In April 2003, Gelrod advised Polansky to purchase three Illinois-bred horses, *Only Choice, Incredible Moe, and Definitely Maybe.* (Compl. ¶ 34.) Robert Waxman owned the horses, which were being trained in Illinois by "Anderson or other Illinois-based trainers." (*Id.* at ¶ 35.) Polansky alleges that "Gelrod, Anderson and Robinson all represented ... that these were three of the top Illinois-bred racehorses ... [who were] training superbly for their debuts as 3-year olds." (*Id.* at. ¶ 37.) Polansky later discovered that the horses did not in fact train well during that time. (*Id.* at ¶ 39.) Gelrod told Polansky to wire money to Anderson Racing, Inc.'s account to purchase the horses; Polansky complied. (*Id.* at ¶¶ 36, 38.) Polansky claims that he paid $200,000 more than the horses' fair market values. (*Id.* at ¶ 38, 41.) Further, Polansky charges that defendants retained over $100,000 of the purchase price without disclosing their financial interest in the transaction. (*Id.* at ¶ 40.)

Finally, pursuant to Gelrod's advice, Polansky purchased a pacer named *Sir Rossini N*, from Anderson. (*Id.* at ¶ 32.) Polansky paid $100,000 for the horse, a price he now claims exceeded the fair market value. (*Id.* at ¶ 33.)

## I. <u>Defendant William Robinson's 12(b)(2) Motion to Dismiss</u>

Robinson claims that we lack personal jurisdiction because 1) defendant has insufficient contacts with Illinois, 2) the fiduciary shield doctrine insulates defendant, in his individual capacity, from Illinois jurisdiction, and 3) plaintiff improperly effectuated service of process.

**STANDARD OF REVIEW**

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), plaintiff bears the burden of showing a *prima facie* case of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). In determining whether we have personal jurisdiction over the defendant, we may receive and consider affidavits and other materials submitted by the parties. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987), *superceded by statute on other grounds as stated in FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990). For purposes of a motion to dismiss based on personal jurisdiction, we "accept all allegations of the complaint as true except those controverted by defendants' affidavits." *Northwestern Corp. v. Gabriel Mfg. Co.*, No. 96 C 2004, 1996 WL 73622, at *2 (N.D. Ill. Feb. 6, 1996). Where the defendant submits an affidavit contesting personal jurisidiction, "the plaintiff *must go beyond the pleadings and submit affirmative evidence* supporting the existence of jurisdiction." *Purdue*, 338 F.3d at 783 (emphasis added). We resolve all factual disputes in the record in plaintiff's favor, but we may accept as true those facts presented in defendant's affidavit that remain uncontested. *Id.;* *RAR*, 107 F.3d at 1275.

## ANALYSIS

In a case based on diversity of citizenship, a federal court sitting in Illinois may exercise personal jurisdiction over a nonresident defendant only to the extent that an Illinois court could do so. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir.1995); *see Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994). Under Illinois law, we must determine that exercising jurisdiction over a nonresident party complies with the Illinois long-arm statute, the Illinois Constitution, and federal constitutional due process requirements. *See*

*Cent. States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000); *see also RAR*, 107 F.3d at 1276. The Illinois long-arm statute permits Illinois courts to exercise jurisdiction on any basis permitted by the state or federal Constitutions. 735 Ill. Comp. Stat. 5/2-209(c); *Cent. States*, 230 F.3d at 940; *RAR*, 107 F.3d at 1276.

Under the Illinois Constitution, a court may exercise personal jurisdiction "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 565 N.E.2d 1302, 1316 (Ill. 1990). As discussed in detail below, we find that exercising personal jurisdiction over Robinson would run afoul of Illinois' constitutional requirements of fairness and reasonableness since, at best, Robinson's contacts with Illinois are attenuated and fortuitous.

The Due Process Clause of the Fourteenth Amendment permits an Illinois court to exercise jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quotation omitted). To establish such minimum contacts, a defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the protections and benefits of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). As a consequence, the defendant "should reasonably anticipate being haled into court" in the forum state. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir.2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985) (internal citations omitted)). Our assessment of minimum contacts turns on whether general or

specific jurisdiction is at issue. *See RAR*, 107 F.3d at 1277.

### A. General Jurisdiction

General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984). Factors we may examine in determining whether general jurisdiction exists include: (1) the extent to which the defendant conducts business in Illinois; (2) whether the defendant maintains an office or employees in Illinois; (3) whether the defendant sends agents into Illinois to conduct business; (4) whether the defendant advertises or solicits business in Illinois; and (5) whether the defendant has designated an agent for service of process in Illinois. *See id.* Illinois courts insist that a defendant's continuous and systematic business contacts "continue up to the time of suit." *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir.1989).

Polansky's complaint alleges that Robinson "conducts business in [Illinois]." (Compl. ¶ 7.) Robinson's affidavit, however, counters this assertion. Once Robinson submitted an affidavit in support of the instant motion, Polansky had a duty to "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 388 F.3d at 783. Since Polansky failed to submit any affidavits or supporting materials regarding Robinson's contacts with Illinois, Robinson's affidavit remains uncontested. *See id.* According to the affidavit, Robinson lives in Ontario, Canada, where he owns William Robinson Stables, Inc. (Robinson Aff. ¶ 2.) While he maintained a license to train horses in Illinois in 2002 and 2003, Robinson never set up an "office, bank account, mailing listing[,] address, [or] telephone listing" in the state. (*Id.* at ¶¶ 6, 10.) Further, Robinson never advertised or designated an agent for

6

service of process in Illinois. (*Id.* at ¶ 10.) In fact, Robinson never traveled to Illinois for business purposes. (*Id.* at ¶¶ 9, 10.)

Polansky relies on Robinson's Illinois license to train horses to extend general personal jurisdiction. However, merely holding an Illinois license to train horses does not justify exercising jurisdiction over an international defendant. "Unlike business corporations, which are deemed to designate the Secretary of State as their agent for service and consent to personal jurisdiction when they register to do business in the state, there is no comparable requirement for licensed trainers." *Polansky v. Gelrod*, 798 N.Y.S.2d 762, 764 (N.Y. App. Div. 2005);[2] Illinois Horse Racing Act of 1975, 230 Ill. Comp. Stat. 5/9, *et seq*. Absent evidence that Robinson used his Illinois license to conduct business on a continued and persistent basis, we cannot extend general personal jurisdiction.[3] Polansky submitted no such evdience. Since Robinson's activity in Illinois does not rise to the level of "continuous and systematic general business contacts" contemplated by the Due Process clause, we cannot exercise general jurisdiction over him.

## B. Specific Jurisdiction

The exercise of specific jurisdiction over a non-resident defendant is limited to claims arising from or related to the defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414 n.8. The Seventh Circuit explained that a court may only consider the dealings between the

---

[2] Polansky first brought a claim against Robinson in New York. That court dismissed the claims against Robinson for many of the same reasons articulated in our opinion.

[3] Polansky points to *Ahart v. Young* to support his contention that holding a license to train horses in Illinois is synonymous with "doing business" in Illinois. 194 Ill. App. 3d 461, 465, 551 N.E.2d 685, 689 (1st Dist. 1990). *Ahart* is inapposite because in that case the defendant consented to personal jurisdiction by filing a general appearance. *Id.* Further, the *Ahart* defendant continuously and "purposefully directed its commercial efforts toward Illinois residents" and maintained ongoing obligations with Illinois residents. *Id.* Unlike *Ahart*, Robinson did not waive his objection to personal jurisdiction, nor did he routinely engage in any business in Illinois.

parties with respect to the claim at issue in assessing minimum contacts. *RAR*, 107 F.3d at 1278. Therefore, we only look to Robinson's contacts with Illinois relating to the allegations in the complaint. Polanksy claims that Robinson participated in the *Miss Billie Le Ru*, *Sly Deputy*, and Illinois-bred horses "schemes." (Compl. ¶¶ 20-31, 34-41.) Robinson submitted an affidavit denying any wrongdoing stating that any involvement he had with the three transactions occurred in Ontario, Canada. (Robinson Aff. ¶ 12.) As previously discussed, Polansky's failure to submit any affidavits or supporting materials renders Robinson's affidavit uncontested. *See Purdue*, 338 F.3d at 783.

### 1. *Miss Billie Le Ru*

Robinson trained *Miss Billie Le Ru* in Ontario, Canada for its owner, Gerrie Tucker. (Robinson Aff. ¶ 15.) In 2002, Tucker transported the horse to New Jersey to compete in a race. (*Id.*) After the race, Polansky purchased *Miss Billie Le Ru*.[4] (Compl. ¶ 24.) Polansky does not allege any connection to Illinois regarding the transaction and Robinson attests that he only dealt with *Miss Billie Le Ru* in Ontario. (Compl. ¶¶ 20-26; Robinson Aff. ¶ 15.) Therefore, the *Miss Billie Le Ru* transaction cannot serve as the basis for extending specific jurisdiction.

### 2. *Sly Deputy*

Robinson trained *Sly Deputy* from April 2002 through August 2002 at his stables in Ontario, Canada. (Robinson Aff. ¶ 16.) After *Sly Deputy* left Robinson's stables around September 2002, Polansky purchased a fifty percent interest in the horse; Gelrod acquired the

---

[4] Polansky alleges in his complaint that he tendered money to Robinson as a commission for the *Miss Billie Le Ru* sale. Robinson denies receiving any commission in his uncontested affidavit. (Robinson Aff. ¶ 20.) Even assuming that Robinson did receive a commission, Polansky neglected to aver any connection between the proceeds and Illinois.

other fifty percent interest. (*Id.*; Compl. ¶ 27.) In early January 2003, Polansky and Gelrod transferred *Sly Deputy* to Robinson's stables. (Robinson Aff. ¶ 17.) Gelrod then sold his interest in *Sly Deputy* to Robinson. (*Id.*; Compl. ¶ 28.) Polansky does not allege that Robinson's acquisition of an interest in *Sly Deputy* had any connection to Illinois. (Compl. ¶¶ 28-31.) Further, Robinson no longer owns any interest in *Sly Deputy*.[5] (Robinson Aff. ¶ 17.) Therefore, the *Sly Deputy* transaction cannot justify specific jurisdiction.

### 3. Illinois-bred horses

Polansky purchased three Illinois-bred horses, *Only Choice*, *Incredible Moe*, and *Definitely Maybe*, from Robert Waxman in April 2003. (Compl. ¶ 34.) The complaint alleges that Robinson participated in this "scheme" by making false representations about the quality of the horses and then sharing in the sales proceeds. (*Id.* at ¶¶ 37, 40.) Polansky argues that we have personal jurisdiction over Robinson based on his involvement with the Illinois-bred horses for two reasons. First, the Illinois Long-Arm statute allows us to exercise jurisdiction where a defendant acquires "ownership, possession or control of any asset or thing of value present within the State when ownership, possession or control was acquired." 735 Ill. Comp. Stat. 5/2-209(10). Polansky claims that jurisdiction is thus proper because "the purchase proceeds [of the Illinois-bred horses sales] ... were located in Illinois and defendant Robinson acquired possession of the proceeds in the State of Illinois through defendant Anderson." (Opp'n to Mot. at 6.) However, since Polansky failed to submit an affidavit, we credit Robinson's attestation that he

---

[5] Polansky alleged that Robinson "owns property in [Illinois] that is the subject of this litigation." (Compl. ¶ 7.) According to the complaint, the only property Robinson owns is *Sly Deputy*. However, Polansky conceded that Robinson no longer owns any interest in *Sly Deputy*. (Opp'n to Mot. at 19.) Further, Polansky alleged no connection between *Sly Deputy* and Illinois. Therefore, we cannot exercise specific jurisdiction on this basis.

9

did not receive a commission from the Illinois-bred horses transactions.[6] *See Purdue*, 338 F.3d at 783. Therefore, we move to Polansky's claim that we have jurisdiction because Robinson breached a fiduciary duty within Illinois. *See* 735 Ill. Comp. Stat. 5/2-209(11).

According to the complaint, Robinson breached his fiduciary duty by falsely representing the quality of the Illinois-bred horses and by retaining a portion of the proceeds from Polansky's purchases. (Compl. ¶¶ 37, 40.) As discussed above, Robinson attested that he did not receive any funds from the sales and nothing in the complaint indicates that Robinson was in Illinois upon the receipt of any alleged commission. Therefore, we cannot say that Robinson breached a fiduciary duty within Illinois by improperly acquiring a portion of the sales proceeds. However, Robinson did not explicitly deny making the alleged representations about the horses' skills so we will reach the merits of Polansky's second argument. (*See* Robinson Aff. ¶ 18.)

Polansky averred that he trusted Robinson and credited Robinson's opinion that the

---

[6] Even if we reached the merits of Polansky's argument, we would not extend personal jurisdiction over Robinson. Polansky failed to allege any facts that indicate that Robinson was in Illinois upon receipt of the funds or that Robinson obtained ownership or control of the proceeds while they remained in Illinois. In contrast, Robinson attested that he never entered the state of Illinois in connection with the Illinois-bred horses, he "never had any business relationship with Joe Anderson or Anderson Racing, Inc.[,]" and he never received any funds in connection with the Illinois-bred horses purchases. (Robinson Aff. ¶ 18). Even assuming that Anderson sent Robinson a portion of the proceeds from the Illinois-bred horses transactions and the transfer of funds is sufficient to establish specific jurisdiction in Illinois, exercising personal jurisdiction over Robinson would not comport with due process.

The Supreme Court has held that a single act will not support jurisdiction unless it is directly related to the plaintiff's claim and it creates a *substantial* connection with the forum such that exercising jurisdiction is fair and reasonable. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (quoting *Burger King*, 471 U.S. at 475). The Illinois Supreme Court further cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Wiles v. Morita Iron Works Co., Ltd.*, 125 Ill.2d 144, 152-53, 530 N.E.2d 1382, 1386 (Ill. 1988). The alleged distribution of sales proceeds is insufficient to justify exercising jurisdiction in Illinois based on the quality and nature of the contact, the burden on an international defendant, and "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316 (quotation omitted).

horses were training well and performing successfully. (Compl. ¶¶ 50, 51.) However, the complaint does not allege that Robinson made the alleged wrongful statements in Illinois, nor does it include any details about the alleged misrepresentation which would support exercising personal jurisdiction. Therefore, we cannot say that Robinson breached a fiduciary duty within Illinois.[7] We thus dismiss the claims against Robinson without prejudice so that Polansky can re-file this action in an appropriate jurisdiction.[8]

## II.  Defendants Joseph Anderson and Anderson Racing, Inc.'s Motion to Dismiss

Defendants Joseph Anderson and Anderson Racing, Inc. claim that Polansky failed to state a claim upon which relief can be granted because he did not comply with the heightened pleading requirements for fraud and he neglected to sufficiently allege the existence of a fiduciary relationship. After reviewing the pleadings, and for the reasons set forth below, we grant defendants' motion and dismiss the claims against Anderson and Anderson Racing, Inc.[9]

---

[7] Further, the facts pled in the complaint undermine the conclusory allegation that a fiduciary relationship existed between Polansky and Robinson, and Polansky failed to submit any affirmative evidence to buttress his breach of fiduciary duty claim. To establish a fiduciary relationship, Polanksy must show that Robinson agreed to act as an independent advisor *and* gained influence and superiority over him. *Pommier v. Peoples Bank MaryCrest*, 967 F.2d 1115, 1119 (7th Cir. 1992); *Paskas v. Illini Fed. Sav. & Loan Ass'n*, 109 Ill. App. 3d 24, 31, 440 N.E.2d 194, 199 (5th Dist. 1982). Robinson was not involved with training the Illinois-bred horses, he did not recommend that Polansky purchase the horses, he did not arrange any details of the sales transactions, and he never "traveled to or otherwise transacted business in the state of Illinois" in connection with the Illinois-bred horses. (Robinson Aff. ¶ 9, 18; *see* Compl. 34-36.) Neither the complaint, nor Robinson's affidavit, indicate that Robinson agreed to act as an independent advisor and subsequently dominated and controlled Polansky.

[8] Since Robinson has insufficient contacts with Illinois, we need not address his remaining arguments for lack of personal jurisdiction or his assertion that Polansky failed to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

[9] The complaint names Anderson and Anderson Racing, Inc. as defendants, however it only refers to Anderson Racing, Inc. once, as the recipient of funds from the Illinois-bred horse sales. It is unclear whether Polansky intends the allegations to constitute claims against Anderson in his individual

11

## STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990) (quotation omitted). A complaint is not required to allege all, or any, of the facts entailed by the claim. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000) (holding that plaintiff can plead conclusions if they put defendant on notice of claims). However, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *Lekas*, 405 F.3d at 613-614.

In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Although, "we are not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991); *see also Tamari v. Bache & Co.*, 565 F.2d 1194, 1199 (7th Cir. 1977) ("[M]ere unsupported conclusions of fact or mixed fact and law are not admitted."). In sum, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

---

capacity or as a representative of Anderson Racing, Inc. The complaint suggests that the claims are directed towards Anderson Racing Co. rather than Anderson individually because the allegations center on Anderson's dealings on behalf of his corporation and Polansky fails to aver facts supporting a pierce the corporate veil theory. Nonetheless, it is unnecessary at this time to determine which claims pertain to each defendant (or whether both defendants are properly before us) based on our ruling. Consequently, we will refer to defendants Anderson and Anderson Racing, Inc. collectively as "Anderson."

12

**ANALYSIS**

*A. Fraud*

Anderson argues that the allegations of fraud in Count I of plaintiff's complaint fail to satisfy Federal Rule of Civil Procedure ("Rule") 9(b)'s particularity requirement. A complaint is required to provide only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(e)(2), unless the pleading avers fraud or mistake, in which case, the complaint must state the circumstances constituting the fraud or mistake with particularity.[10] Fed. R. Civ. P. 9(b).

In describing the fraud, a plaintiff must describe the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (quotation omitted). The absence of any necessary detail renders the pleading deficient. For example, in *Sequel Capital Corporation v. Airship International Ltd.*, the court found the complaint failed to comply with Rule 9(b) because it did not allege the location where the purported fraudulent statements were made and how they were communicated. 148 F.R.D. 217, 219 (N.D. Ill. 1993). Further, mere conclusory language which asserts fraud, without a description of fraudulent conduct, does not satisfy Rule 9(b). *Lincoln Nat. Bank v. Lampe*, 414 F. Supp. 1270, 1279 (N.D. Ill. 1976). Finally, where the allegations of a fraudulent scheme include multiple defendants, the complaint must "inform each defendant of the specific fraudulent acts" which constitute the basis of the action against them. *Id.* at 1278; *Dudley Enter., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 500 (N.D. Ill. 1993) ("[I]t is

---

[10]Anderson also argues that the complaint fails to comply with Rule 8(a). We disagree. The complaint satisfies the liberal notice pleading requirement.

13

not enough for plaintiffs to allege that 'defendants' committed fraudulent acts.").

The complaint uniformly fails to meet the standards set forth in Rule 9(b). The allegations do not state with specificity the time or circumstances under which the alleged fraudulent acts took place. Plaintiff generically refers to "material and factual misrepresentations" without specifying the time, place, particular contents, and manner in which they were communicated. (Compl. ¶ 43.) The only time the complaint specifically references the subject matter of an alleged misrepresentation, it does not indicate which statements are attributable to each defendant, nor does it describe the circumstances surrounding those statements: "Gelrod, Anderson and Robinson all represented to Plaintiff that these were three top Illinois-bred racehorses. Each of them had been successful as a 2-year old and they were represented to be training superbly for their debuts as 3-year olds." (Compl. ¶ 37.) Consequently, Anderson cannot accurately discern the nature of his role in the alleged wrongdoing involving the Illinois-bred horse transactions.[11]

With regards to the *Sir Rossini N* transaction, the complaint is devoid of any facts suggesting that Anderson participated in fraudulent conduct. (Compl. ¶ 33.) Anderson is only referenced in his capacity as *Sir Rossini N*'s owner. (*Id.* ¶ 32.) Polansky does not aver that Anderson made any material misrepresentations or omissions regarding *Sir Rossini N*. Apparently, Plaintiff believes that Anderson defrauded him by charging too much for the horse. However, in Illinois, "[a] person may not enter into a transaction with his eyes closed to available

---

[11] Moreover, alleging that Polansky overpaid for the horses, standing alone, does not satisfy the specificity requirement because Illinois adheres to the principle of *caveat emptor* (buyer beware). *See Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125-26, 648 N.E.2d 226, 232 (1st Dist. 1995).

information and then charge that he has been deceived by another." *Adler*, 271 Ill. App. 3d at 125-26, 648 N.E.2d at 232. Based upon the complaint, Polansky cannot maintain a cause of action for common law fraud against Anderson for the *Sir Rossini N* or the Illinois-bred horses transactions. *See* Fed. R. Civ. P. 9(b); *see, e.g., Charles Hester Ent., Inc. v. Illinois Founders Ins. Co.*, 114 Ill.2d 278, 289, 499 N.E.2d 1319, 1324 (Ill. 1986) (ruling that plaintiff must allege false statement of material fact for fraud claim). The allegations fail to rise to the level of specificity required by Rule 9(b) and, thus, we dismiss Count I of the complaint.[12]

### B. Fiduciary Duty

To adequately plead a cause of action for breach of fiduciary duty, a plaintiff must allege (1) a fiduciary relationship, (2) a breach of the fiduciary duty, and (3) injury resulting from the breach. *Lucini Italia Co. v. Grappolini*, No. 01 C 6405, 2003 WL 1989605, at *13 (N.D. Ill. Apr. 28, 2003). Polansky can satisfy the pleading requirement by "making the minimal allegations necessary to give defendant notice of the charge against him." *DeLeon v. Benef. Const. Co.*, 55 F. Supp. 2d 819, 827 (N.D. Ill. 1999). However, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *Lekas*, 405 F.3d at 613-614. While Polansky alleges that Anderson breached a fiduciary duty, the facts pled in the complaint render the conclusory allegations suspect and deficient.

Under Illinois law, a fiduciary or confidential relationship exists where one reposes trust

---

[12] The complaint includes various allegations based "on information and belief" without reference to the factual underpinnings of those beliefs. (*See, e.g.*, Compl. ¶¶ 30, 40.) If Polansky chooses to re-file this claim, he should be aware that allegations based "on information and belief" generally do not satisfy the particularity requirements of Rule 9(b). *Bankers Trust*, 959 F.2d at 684. Allegations of matters particularly within the knowledge of an adverse party must "be accompanied by a statement of facts upon which the belief is founded." 2A Moore's Federal Practice ¶ 9.03 (3d ed. 1982); *Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir. 1962).

and confidence in another, who, as a result, gains influence and superiority over them.[13] *Pommier*, 967 F.2d at 1119; *DeLeon*, 55 F. Supp.2d at 827; *Steinmetz v. Kern*, 375 Ill. 616, 619, 32 N.E.2d 151, 154 (Ill. 1941); *Simon v. Wilson*, 291 Ill. App. 3d 495, 503, 684 N.E.2d 791, 806 (1st Dist. 1997). Factors to be taken into consideration in determining "whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant party' and placed trust and confidence in it." *Gonzales v. Am. Exp. Credit Corp.*, 315 Ill. App. 3d 199, 210, 733 N.E.2d 345, 353 (1st Dist. 2000). "In order to establish a fiduciary relationship, the trust and confidence allegedly reposed by the first party must actually be accepted by the second party." *DeWitt County Pub. Bldg. Comm'n v. County of DeWitt*, 128 Ill. App. 3d 11, 26, 469 N.E.2d 689, 700 (4th Dist. 1984); *Bank Computer Network Corp. v. Continental Illinois Nat'l Bank & Trust of Chicago*, 110 Ill. App. 3d 492, 503, 442 N.E.2d 586, 594 (1st Dist. 1982).

Polansky alleges that he trusted Anderson to deal fairly and objectively on his behalf in a number of horse purchases. (Compl. ¶¶ 50-51.) Further, he alleges that Anderson "represented to [him] that [he] could rely upon [Anderson's] advice in the purchase of horses and to insure that the purchases were in [his] best interests." (*Id.* at ¶ 50.) Construing the complaint in the light most favorable to plaintiff, such allegations could imply that Anderson "accepted" plaintiff's trust. However, the facts pled in the complaint do not support that inference and "we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim

---

[13] In diversity jurisdiction cases, such as the one before us, we apply federal procedural law and state substantive law. *See Pommier*, 967 F.2d at 1119.

or to assign any weight to unsupported conclusions of law." *Scott v. O'Grady*, 975 F.2d 366, 368 (N.D. Ill. 1993). First, Polansky alleges that he purchased *Sir Rossini N* from Anderson based upon Gelrod's recommendation. (Compl. ¶ 32.) Plaintiff does not claim that Anderson agreed to act as an independent participant in the sale, nor would such a claim make sense given Anderson's incentive to maximize his profit. In Illinois,

> [t]he mere fact that a business transaction is conducted does not give rise to an inference of a fiduciary obligation...A person cannot blindly enter into a business transaction, placing complete faith in the other party that he will look out for the person's best interests, thereby imposing upon him the mantle of a fiduciary.

*Maguire v. Holcomb*, 169 Ill. App. 3d 238, 243, 523 N.E.2d 688, 691 (5th Dist. 1988); *see also Pommier*, 967 F.2d at 1119 ("The fact that one party trusts the other is insufficient. We trust most people with whom we choose to do business."). The facts pled do not support the existence of a fiduciary relationship or duty that arose as a result of the *Sir Rossini N* sale.

As for the Illinois-bred horses, the facts pled in the complaint undermine plaintiff's allegations that Anderson agreed to act as an independent advisor and subsequently exercised dominance and control over Polansky. *See Pommier*, 967 F.2d at 1119. According to the complaint, Gelrod recommended that plaintiff purchase horses from Waxman, "a prominent owner of standardbred horses" who was suffering financial difficulties. (Compl. ¶ 34.) Then, Gelrod set up the details of the transaction and directed Polansky to wire $350,000 to Anderson Racing Co., Inc. in exchange for Waxman's three horses.[14] (*Id.* at ¶ 36.) The complaint does not allege that Anderson advised Polansky to purchase the horses, nor does it allege that Polansky discussed the purchase price with Anderson. Further, Polansky knew that Anderson was acting

---

[14] The complaint likely supports the existence of a fiduciary relationship between Gelrod and Polansky, but Gelrod is not a defendant in this case.

17

as Waxman's representative. (*Id.* at ¶ 36 ("Anderson would use the funds to pay off some of Mr. Waxman's obligations.").) Despite plaintiff's contention that Anderson made representations about the quality of the horses, the facts pled in the complaint show that Anderson did not agree to act as an independent advisor during the transaction and Polansky was not under Anderson's domination and control.[15] (*Id.* at ¶ 37.); *see also R.J. Mgmt. Co. v. SRLB Dev. Corp.*, 346 Ill. App. 3d 957, 968, 806 N.E.2d 1074, 1084 (2d Dist. 2004) ("Generally, where parties capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party, no fiduciary relationship will be deemed to exist."). Therefore, we dismiss the breach of fiduciary duty claim against Anderson.

## CONCLUSION

For the reasons described above, we dismiss the claims against Robinson without prejudice so that Polansky can re-file this action in an appropriate jurisdiction. We also dismiss

---

[15] The facts alleged also do not support an inference that plaintiff was subject to Anderson's control under any of the factors listed in *Gonzales*. 315 Ill. App. 3d at 210, 733 N.E.2d at 353. While Polansky claims that Anderson was more experienced in the horse industry, Anderson's expertise lay in training, not selling horses. (Compl. ¶¶ 2.) Further, Polansky entered the industry in the middle of 2001 and invested a half a million dollars in standardbred racing horses. (*See id.* at ¶ 12.) According to the complaint, Anderson did not transact business with Polansky in any capacity until at least a year later during the spring or summer of 2002. (Id. at ¶¶ 17, 34.) Finally, Polansky, a licensed attorney who practiced law up until two years ago, cannot claim significantly inferior intellectual capacity or mental infirmities which affect his ability to manage his own affairs. (*Id.* at ¶ 1.)

the claims against Anderson and Anderson Racing Inc., without prejudice.[16]

                                                     MARVIN E. ASPEN
                                                     United States District Judge

Date: December 29, 2005

---

[16] We dismiss without prejudice in the event plaintiff determines he is able to successfully amend his complaint against Anderson and Anderson Racing, Inc. within fourteen days of the date of the entry of this order.
     We also deny defendants' request for attorney's fees and other costs associated with bringing this motion. We do not find sanctions to be appropriate here. *See* Fed. R. Civ. P. 11.