**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL E. POLANSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 04 C 3526 |
| | ) | |
| JOSEPH ANDERSON, | ) | |
| ANDERSON RACING | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER AND OPINION**

MARVIN E. ASPEN, District Judge:

Plaintiff, Michael E. Polansky, asserts claims against defendants Joseph Anderson and

Anderson Racing, Inc. for fraud, breach of fiduciary duty, conspiracy, and accounting in regards

to three racehorse sales transactions. Presently before us is defendants' motion to dismiss the

complaint pursuant to Rules 12(b)(6), 8(a), and 9(b). Defendants Joseph Anderson and

Anderson Racing, Inc. claim that Polansky failed to state a claim upon which relief can be

granted because he did not comply with the heightened pleading requirements for fraud and he

neglected to sufficiently allege the existence of a fiduciary relationship. In addition, defendants

argue that plaintiff failed to state a claim for accounting or conspiracy. After reviewing the

pleadings, and for the reasons set forth below, we grant the motion in part and deny the motion

in part.

**BACKGROUND**

Polansky entered the standardbred horse racing industry sometime in 2001 when he

purchased racehorses. (Compl. ¶ 11.) During the summer of 2002, Monte Gelrod, a veteran horse trainer, began pursuing a business relationship with Polansky.[1] (*Id.* ¶¶ 12-15.)

Plaintiff owned a horse named *Piratesofpanzance* which was initially trained by Mark Franzen. (*Id.* ¶ 16.) Gelrod informed Polansky that Franzen "was an incompetent trainer ... [and] that he would have much greater racing success if he were to transfer [training duties] ... to Joseph Anderson." (*Id.* ¶17.) Plaintiff took Gelrod's advice around November 16, 2000. (*Id.*)

In April 2003, Gelrod advised Polansky to purchase three Illinois-bred horses, *Only Choice, Incredible Moe, and Definitely Maybe*. (*Id.* ¶ 19.) Robert Waxman owned the horses, which were being trained in Illinois by Erwin Miller. (*Id.* at ¶ 20.) According to Polansky, "Anderson, acting on Plaintiff's behalf, examined the horses to ascertain their condition and quality ... and represented to Plaintiff [along with Gelrod] that these were three of the top Illinois-bred racehorses. Each of them had been successful as a 2-year old and they were ... training superbly for their debuts as 3-year olds." (*Id.* ¶ 22.) Anderson reported on the horses in a telephone conversation with Polansky around April 1. (*Id.* ¶¶ 22-23.) According to Polansky, Anderson knowingly misrepresented the horses' accomplishments. (*Id.* ¶¶ 25, 30(a), 31.)

In reliance on Anderson's and Gelrod's representations, Polansky decided to buy the horses. (*Id.* ¶ 33.) Gelrod communicated the terms of the transaction to plaintiff, directing him to wire $350,000.00 to Anderson and then "Anderson would use the funds to pay off some of Mr. Waxman's obligations with any balance going to Mr. Wa[x]man." (*Id.* ¶ 21.) Polansky wired the funds to Anderson Racing, Inc. on April 9 after speaking with Janet Anderson, who

---

[1] Polansky states that Gelrod misrepresented his status as a qualified independent trainer and advisor. (*See, e.g.*, Compl. ¶ 12-15.) However, Polansky did not name Gelrod as a defendant. (*Id.* at ¶ 5.) Consequently, the facts focus on defendants' involvement with Polansky and only refer to Gelrod where necessary to provide context.

assured him that she would disburse the funds on his behalf. (*Id.* ¶ 24.) Polansky alleges that Anderson and Anderson Racing, Inc., among others, kept a portion of the proceeds "for themselves and others who were not entitled to share in those monies." (*Id.* ¶ 47.)

## STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990) (quotation omitted). A complaint is not required to allege all, or any, of the facts entailed by the claim. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000) (holding that plaintiff can plead conclusions if they put defendant on notice of claims). However, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *Lekas,* 405 F.3d at 613-614.

In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Although, "we are not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991); *see also Tamari v. Bache & Co.*, 565 F.2d 1194, 1199 (7th Cir. 1977) ("[M]ere unsupported conclusions of fact or mixed fact and law are not admitted."). In sum, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

# ANALYSIS

## A. Fraud

Anderson argues that the allegations of fraud in Count I of plaintiff's complaint fail to satisfy Federal Rule of Civil Procedure ("Rule") 9(b)'s particularity requirement. A complaint is required to provide only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(e)(2), unless the pleading avers fraud or mistake, in which case, the complaint must state the circumstances constituting the fraud or mistake with particularity.[2] Fed. R. Civ. P. 9(b).

In describing the fraud, a plaintiff must describe the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir. 1992) (quotation omitted). The absence of any necessary detail renders the pleading deficient. Moreover, mere conclusory language which asserts fraud, without a description of fraudulent conduct, does not satisfy Rule 9(b). *Lincoln Nat. Bank v. Lampe,* 414 F. Supp. 1270, 1279 (N.D. Ill. 1976). Finally, where the allegations of a fraudulent scheme include multiple defendants, the complaint must "inform each defendant of the specific fraudulent acts" which constitute the basis of the action against them. *Id.* at 1278; *Dudley Enter., Inc. v. Palmer Corp.*, 822 F. Supp. 496, 500 (N.D. Ill. 1993) ("[I]t is not enough for plaintiffs to allege that 'defendants' committed fraudulent acts.").

The Amended Complaint satisfies the pleading standards set forth in Rule 9(b). Plaintiff alleges the following: Around April 1, Anderson personally inspected the horses on plaintiff's

---

[2]Anderson also argues that the complaint fails to comply with Rule 8(a). We disagree. The complaint satisfies the liberal notice pleading requirement.

behalf and concluded that they "were three of the top Illinois-bred racehorses ... [who had been] successful as[] 2-year old[s] and ... [who were] training superbly for their debuts as 3-year olds." (Compl. ¶ 22.)  The alleged misrepresentations were made on the telephone while he was in New York and Polansky was in Illinois and Florida.  (*Id.* ¶ 23.)  Anderson knowingly misrepresented the quality and condition of the horses to induce him to purchase the horses at an inflated price.  (*Id.* ¶¶ 30a, 31, 32.)  Polansky bought the horses in reliance on Anderson's representations.  Also, Anderson, who was acting as an intermediary between Polansky and the seller, diverted some of the proceeds of the sale for his personal use.[3]  (*Id.* ¶ 25.)  Anderson did not reveal his personal interest in the transaction when he offered his opinion on the horses.  (*See id.* ¶ 25.)  Finally, Polansky would not have bought the horses (let alone paid inflated prices) if Anderson had not misrepresented the quality of the animals.  (*Id.* ¶¶ 33-34.)

While the complaint contains numerous, irrelevant references to Gelrod, the allegations directed at Anderson are sufficient to put him on notice of the nature of Polansky's claim. Defendants did not provide any appropriate legal authority to buttress their arguments, nor did they explain how the allegations regarding Anderson's misrepresentations failed to rise to the level of specificity proscribed by Rule 9(b).  Therefore, taking all of the allegations as true and drawing all inferences in Polansky's favor, Count I of the Amended Complaint survives the motion to dismiss.

### B.    *Fiduciary Duty*

---

[3] Polansky alleges that Mr. Waxman only received a fraction of the proceeds that he sent to Anderson Racing Co.  (*Id.* ¶¶ 26-27, 29(b), 30(b).)  These allegations appear pertinent to the fraud claim only insofar as plaintiff contends that Anderson had an undisclosed personal interest in the transaction, which related to his motivation to deceive Polansky.  Plaintiff received the horses in exchange for the agreed price (regardless of whether it seems fair in hindsight) so it seems irrelevant whether or not Mr. Waxman has a claim against Anderson for the balance of the proceeds.

To adequately plead a cause of action for breach of fiduciary duty, a plaintiff must allege (1) a fiduciary relationship, (2) a breach of the fiduciary duty, and (3) injury resulting from the breach. *Lucini Italia Co. v. Grappolini,* No. 01 C 6405, 2003 WL 1989605, at *13 (N.D. Ill. Apr. 28, 2003). Polansky can satisfy the pleading requirement by "making the minimal allegations necessary to give defendant notice of the charge against him." *DeLeon v. Benef. Const. Co.,* 55 F. Supp. 2d 819, 827 (N.D. Ill. 1999). Defendants argue that the complaint fails to sufficiently plead the existence of a fiduciary relationship between Anderson and Polansky.

Under Illinois law, a fiduciary or confidential relationship exists where one reposes trust and confidence in another, who, as a result, gains influence and superiority over them.[4] *Pommier v. Peoples Bank Marycrest,* 967 F.2d 1115, 1119 (N.D. Ill. 1999); *DeLeon,* 55 F. Supp.2d at 827*; Steinmetz v. Kern,* 375 Ill. 616, 619, 32 N.E.2d 151, 154 (Ill. 1941)*; Simon v. Wilson,* 291 Ill. App. 3d 495, 503, 684 N.E.2d 791, 806 (1st Dist. 1997). Factors to be taken into consideration in determining "whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant party' and placed trust and confidence in it." *Gonzales v. Am. Exp. Credit Corp.*, 315 Ill. App. 3d 199, 210, 733 N.E.2d 345, 353 (1st Dist. 2000). "In order to establish a fiduciary relationship, the trust and confidence allegedly reposed by the first party must actually be accepted by the second party." *DeWitt County Pub. Bldg. Comm'n v. County of DeWitt,* 128 Ill. App. 3d 11, 26, 469 N.E.2d 689, 700 (4th Dist. 1984); *Bank Computer Network Corp. v.*

---

[4] In diversity jurisdiction cases, such as the one before us, we apply federal procedural law and state substantive law. *See Pommier v. Peoples Bank Marycrest,,* 967 F.2d 1115*,* 1119 (N.D. Ill. 1999).

*Continental Illinois Nat'l Bank & Trust of Chicago*, 110 Ill. App. 3d 492, 503, 442 N.E.2d 586, 594 (1st Dist. 1982).

To establish the existence of a fiduciary relationship, Polansky alleges that he trusted Anderson to deal fairly and objectively on his behalf in assessing the Illinois-bred horses.[5] (Compl. ¶¶ 37-38.)  Further, he alleges that Anderson "undertook to act primarily for the Plaintiff in the purchase of horses ... [and] represented to [him] that [he] could rely upon [Anderson's] advice ... to insure that the purchases were in [his] best interests." (*Id.* ¶ 37.) Construing the complaint in the light most favorable to plaintiff, such allegations could imply that Anderson "accepted" plaintiff's trust.

The facts pled in the complaint could also be construed to support the allegations that Anderson agreed to act as an independent advisor and subsequently exercised influence and control over Polansky.  *See Pommier*, 967 F.2d at 1119.  According to the complaint, "Anderson, acting on Plaintiff's behalf, examined the horses to ascertain their condition and quality, i.e., whether they were worth the $350,000 being asked." (Compl. ¶ 22.)  While Polansky knew that Anderson was involved with Waxman in that he "would use the funds [plaintiff provided] to pay off some of Mr. Waxman's obligations[,]" Anderson allegedly "represented to [Polansky] that

_____

[5] Polansky also includes allegations about Anderson's involvement with another of plaintiff's horses, *Piratesofpenzance,* in November 2002.  Polansky claims that interaction demonstrates that "Anderson and [himself] were engaged in a fiduciary relationship and Anderson owed [him] a duty of good faith and loyalty." (Compl. ¶ 17.)  However, in Illinois,

> [t]he mere fact that a business transaction is conducted does not give rise to an inference of a fiduciary obligation...A person cannot blindly enter into a business transaction, placing complete faith in the other party that he will look out for the person's best interests, thereby imposing upon him the mantle of a fiduciary.

*Maguire v. Holcomb*, 169 Ill. App. 3d 238, 243, 523 N.E.2d 688, 691 (5th Dist. 1988); *see also Pommier*, 967 F.2d at 1119 ("The fact that one party trusts the other is insufficient.  We trust most people with whom we choose to do business.").  Moreover, the complaint makes no attempt to relate the *Piratesofpenzance* interactions to the instant claims.

[he] could rely upon [Anderson's] advice ... to insure that the purchases were in [his] best interests." (*Id.* ¶ 21, 37.) At this stage of litigation we must assume that all of the allegations are true and draw all reasonable inferences in plaintiff's favor.

The complaint also provides sufficient information from which we can reasonably infer that Anderson exercised influence over Polansky. Despite failing to allege any kinship, disparity in age, or medical or mental infirmities, Polansky claims that Anderson repeatedly expressed his expertise in horse transactions, plaintiff entrusted Anderson to act on his behalf, and Anderson advised Polansky on the quality and value of the horses. (*Id.* ¶¶ 2, 22, 37, 38.) While Polansky was not a novice in the horse industry at the time of the Illinois bred horse transactions, the complaint clearly suggests that plaintiff felt unqualified to independently assess the horses' values and thus relied upon Anderson, a seasoned horse trainer who expressed expertise in such transactions, to inspect the horses on his behalf. (*Id.* ¶¶ 12, 13, 24, 37, 38.) The allegations in the amended complaint do not undermine or contradict an inference that Anderson acted as an independent advisor who exercised control or influence over Polansky. *See Lekas,* 405 F.3d at 613-614. Therefore, taking all allegations of the complaint as true and drawing all reasonable inferences in plaintiff's favor, we cannot say that Polansky can present no facts in support of the existence of a fiduciary relationship between himself and Anderson. *Cf. R.J. Mgmt. Co. v. SRLB Dev. Corp.,* 346 Ill. App. 3d 957, 968, 806 N.E.2d 1074, 1084 (2d Dist. 2004) ("Generally, where parties capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party, no fiduciary relationship will be deemed to exist.").

C.     *Accounting*

In Count III of his Amended Complaint, Polansky seeks an accounting of the purchase proceeds. Plaintiff claims that "Defendants disbursed only $140,000 of the $350,000 for the benefit of Mr. Waxman, the seller of the three (3) Illinois-breds." (Compl. ¶ 44.) However, it is unclear why it is necessary to obtain an accounting of the distribution of the proceeds since Polansky received the three horses in accordance with the terms of the sales transaction. Polansky's response to the motion to dismiss fails to address this issue. Rather, plaintiff claims, "[a]s there is no adequate remedy at law to determine where the proceeds of the sale from the Illinois bred horses were directed, Defendants' motion to dismiss should be denied as retaining this claim will most likely be of little consequence since discovery will most likely reveal the information that plaintiff seeks." (Resp. to Mot. at 9.)

While an accounting is appropriate in certain breach of fiduciary duty claims, the accounting claim in the case at bar does not appear related to the alleged wrongdoing. Polansky alleges that defendants breached their fiduciary duty by misrepresenting the value of the horses to induce plaintiff to purchase the Illinois breds. Upon receipt of Polansky's funds, defendants tendered the three horses in accordance with the terms of the bargained-for-exchange. Whether Mr. Waxman obtained the full benefit of purchase proceeds is irrelevant to plaintiff's breach of fiduciary duty claim. *See Mann v. Kemper Financial Co., Inc.*, 247 Ill. App. 3d 966, 980-81, 618 N.E.2d 317, 327 (1st Dist. 1993) (finding an accounting for damages appropriate in an action brought by shareholders alleging fraud and breach of fiduciary duty)*; cf. People v. Candy Club,* 149 Ill. App. 3d 498, 500-01, 501 N.E.2d 188, 190-91 (1st Dist. 1986) (reversing the circuit court's dismissal of an accounting action based on breach of fiduciary duty where the allegations sufficiently described a fiduciary relationship and the need for discovery to establish

the damages). Plaintiff does not have standing to assert a claim on Mr. Waxman's behalf and he neglected to explain the relevance of an equitable accounting action for his fraud or breach of fiduciary duty claims. *See Vickers v. Henry County Sav. & Loan Ass'n,* 827 F.2d 228, 232 (7th Cir. 1987) (upholding district court's dismissal where "appellants ... s[ought] an accounting for an obligation owed by a third party."); *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.,* No. 03 C 9421, 2004 WL 3363844, at *18 (N.D. Ill. Dec. 28, 2004). Therefore, we dismiss Count III.

### D. Conspiracy

In Count IV of his complaint, Polansky alleges that defendants conspired with Gelrod to defraud him in the purchase of three Illinois bred horses. (Compl. ¶¶ 45-49.) To state a claim for conspiracy, plaintiff must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnson*, 209 Ill.2d 302, 317, 807 N.E.2d 461, 470 (Ill. 2004).

Defendants argue that the complaint fails to state a claim for conspiracy "because a conspiracy count relies upon the validity of an underlying cause of action upon which the conspiracy count is based." (Mot. at 6.) Polansky responds that the allegations of Anderson's fraud and breach of fiduciary duty constitute overt tortious and unlawful acts for purposes of a conspiracy claim. (Resp. to Mot. at 10.) In their reply, defendants argue that "[n]either Count I nor Count II have been successfully plead and must be dismissed [thus,] Count IV for civil conspiracy must also be dismissed." (Reply to Mot. at 13-14.) As previously discussed, however, plaintiff sufficiently pled causes of action for fraud and breach of fiduciary duty. *See*

Sections A & B, *supra.*  In light of our ruling on Counts I and II, and because defendants failed

to properly raise any other arguments in support of their motion to dismiss Count IV,[6] the

conspiracy claim survives this stage of litigation.  *See Dunkin' Donuts Inc. v. N.A.S.T. Inc.*, 428

F. Supp. 2d 761, 775 (N.D. Ill. 2005) ("It is not this Court's job to make parties' arguments for

them, and it will not do so in this case."); *Seymour v. Hug*, 413 F. Supp. 2d 910, 933 (N.D. Ill.

2005) (same); *Am. Hardware Mfrs. Ass'n*, 2004 WL 3363844, at *18 (denying motion to dismiss

conspiracy claim because the underlying fraud was sufficiently pled.).


### CONCLUSION

For the reasons set forth above, we deny defendants' motion to dismiss Counts I, II, and

IV and grant the motion as to Count III.  It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: July 19, 2006

---

[6] In their reply, defendants argue that "[t]he Amended Complaint is completely devoid of any specific or even conclusory allegations that Anderson entered into an agreement with any other individual."  (Reply to Mot. at 14.)  However, it is improper to raise an argument for the first time in a reply because it deprives the plaintiff of an opportunity to respond.  Nonetheless, the conspiracy claim would survive even if we considered defendants' belated argument on its merits.  In Illinois, "[a] 'concert of action' occurs when a tortious act is committed with another or pursuant to a common design or when one party renders substantial assistance to another knowing that the other's conduct constitutes a breach of fiduciary duty."  *Hume & Leichty Veterinary Assocs. v. Hodes,* 259 Ill. App. 3d 367, 369, 632 N.E.2d 46, 48 (1st Dist. 1994).  Polansky alleges that Gelrod, who devised the scheme to defraud plaintiff, "enlisted the aid and support of Anderson ... [who then] participated in the scheme ... with full knowledge of Gelrod's intentions and objectives."  (Compl. ¶¶ 10, 18, 46.)  The complaint further explains that Anderson inspected the Illinois bred horses for Polansky and, along with Gelrod, misrepresented their value.  (*Id.* ¶ 22.)  Specifically, Anderson claimed that the horses "had been successful as a [sic] 2-year old[s] and they were ... training superbly for their debuts as 3-year olds."  (*Id.*)  Taking all allegations as true and drawing all reasonable inferences in plaintiff's favor, the complaint sufficiently pleads an agreement or concerted action.